IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RAYMOND MICHAEL COBB, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 7:22-cv-00610 |
| SUPERINTENDENT HAUG, *et al.*, | ) By: Elizabeth K. Dillon |
| Defendants. | ) United States District Judge |

**MEMORANDUM OPINION**

*Pro se* plaintiff Raymond Michael Cobb was an inmate at the New River Regional Jail when he was assaulted by another inmate. (*See* Compl., Dkt. No. 1.) Cobb filed suit against various jail officers and officials, all of whom filed a motion to dismiss. (Dkt. No. 18.) For the reasons stated below, the court will consider defendants' motion as a partial motion for summary judgment because defendants filed matters outside of the pleadings for the court to consider. The balance of the motion will be considered a partial motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction. The summary judgment motion will be granted, but the motion to dismiss will be granted in part and denied in part.

I. BACKGROUND

**A. Cobb's Complaint**

Cobb was an inmate at the New River Regional Jail in Dublin, Virginia, in August 2022. (*See* Compl.) Cobb alleges that on August 27, he was struck on the left side of his face by an inmate while he was working as a tray server and serving trays at the maximum-security dorm. Cobb asserts that unspecified officers were in violation of the jail's policy because they opened the doors to the wing instead of serving through the tray hole with the door closed. (*See id.*)

Cobb names seven defendants: Superintendent Kimberly Haug, Lisa Ferguson, Lt. James Hatfield, Officer Jeremy Cohen, Lt. Michael Turner, Sgt. Shane Anders, and Officer Joshua Crigger.

Cobb claims that he was knocked to the ground and was almost unconscious. (Compl. at 4.) He was transported to the emergency room, and x-rays showed that his left eye socket was cracked in several places. Cobb alleges that the emergency room doctor suggested to Officer Crigger (incorrectly spelled as Kruegger) that plaintiff be taken to a hospital in Roanoke immediately. Instead, Crigger took Cobb back to the jail, and two days later, the jail medical staff scheduled an appointment for plaintiff to have surgery. (*Id.*) The appointment was scheduled for September 9, 2022, 13 days after the incident. The surgeon told Cobb that 14 days was the deadline for the surgery, and that there really was not much to improve with surgery since the eye socket had probably healed too much. The surgeon said Cobb should have had the surgery much sooner. (*Id.*)

Cobb alleges that Officer Cohen and Lt. Turner violated his rights by having the cell door open where they knew that the inmates were there because of violent histories. (Compl. at 4.) Also, Lt. Hatfield (misspelled Hatley) and Sgt. Anders, supervisors to Officer Cohen and Lt. Turner, violated Cobb's rights by allowing them to perform their duties in this manner. Cobb alleges that inmates serving trays have been attacked in this manner before, and the jail continues to be negligent in this area. Plaintiff further alleges that Superintendent Haug should be liable for his injuries because she is responsible for the safety of all inmates at the jail. (*Id.*)

Finally, Cobb complains that the jail did not respond to his request for a grievance form for about two weeks. (*Id.* at 5.) Cobb alleges that he was lied to so he could not obtain a grievance form before being transferred to another facility.

Cobb asserts that the left side of his face continues to be numb and he can only chew on the right side of his mouth.  He experiences sinus headaches.  (*Id.* at 4.)  Plaintiff seeks compensatory relief for pain and suffering.  (*Id.* at 6.)

The court construes Cobb's complaint to allege Eighth Amendment deliberate indifference claims based on his assault in prison and subsequent medical care.[1]

**B. Medical Records**

Defendants filed medical records from plaintiff's medical appointments in support of their motion.  (Ex. 1, Dkt. No. 19-1.)  The notes from plaintiff's August 27, 2022 visit show that Cobb was "accepted to transfer to RMH."  (Ex. 1 at 5.)  However, Cobb did "not wish to be transferred and would like an ambulatory referral to maxillofacial surgery."  (*Id.*)

During a later visit with a surgeon, Cobb was advised that "with the window of 14 days, [plaintiff] would need to undergo open reduction tomorrow/Friday."  (*Id.* at 1–2.)  Instead, Cobb had a court appointment he had "waited for a month to obtain."  (*Id.* at 1.)  "With this in mind and given the patient's minimal symptoms that have been improving over time, the benefit of surgery may not be significant enough."  (*Id.*)  The surgeon told Cobb that he "may have improvement of neuropraxia and possibly minor improvement in pain, however neither of these are all that predictable."  (*Id.*)  Cobb's "jaw motion was already within normal range."  (*Id.*)  "After discussing the risk, benefits, [and] alternatives the decision is made together to not pursue surgery."  (*Id.*)

---

[1] Cobb references the Fourteenth Amendment, but "the Due Process Clause affords no greater protection than does the Cruel and Unusual Punishment Clause."  *Whitley v. Albers*, 475 U.S. 312, 327 (1987).  Allegations that prison officials have used excessive force or have been indifferent to prison conditions imposed without a legitimate penological purposes "fall squarely within the ambit of the Eighth Amendment—not the due process clause."  *Prieto v. Clarke*, 780 F.3d 245, 251 (4th Cir. 2015).  Therefore, Cobb cannot bring a stand-alone substantive due process claim.

II. ANALYSIS

A. **Standard of Review**

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1), arguing that the court may consider Cobb's medical records without converting the motion to one for summary judgment. However, when the court issued its *Roseboro*[2] notice, the court specifically advised Cobb that submission of materials outside the pleadings by either party would convert the motion to dismiss to a motion for summary judgment if the materials were considered by the court. (Dkt. No. 21.) Therefore, the court will address defendants' motion as one for summary judgment, but only as it relates to plaintiff's claim that he received inadequate medical care. Cobb's medical records are only relevant to that claim. *See Miller v. Kimbrell*, C/A No. 6:19-cv-02085-DCC-KFM, 2020 WL 3514518, at *2 (D.S.C. Apr. 24, 2020) (relying on the court's *Roseboro* notice as proper notice to convert motion to dismiss into motion for summary judgment). The balance of the motion will be treated as a motion pursuant to Rules 12(b)(6) and 12(b)(1).[3]

    **1. Failure to state a claim**

When analyzing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court must view all well-pleaded allegations in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Even so, "[f]actual

---

[2] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

[3] Defendants do not articulate the standard for dismissal under Federal Rule of Civil Procedure 12(b)(1), but it appears that they have referenced Rule 12(b)(1) because they argue that they are entitled to sovereign immunity on a potential state law negligence claim. *See Chapman v. Md. Dep't of State Police*, Civil Action No. ADC-23-442, 2023 WL 5053545, at *3 (D. Md. Aug. 8, 2023) (finding that sovereign immunity is grounds for dismissal under Rule 12(b)(1) because immunity "functions as a block on the exercise of that jurisdiction").

allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555.  A plaintiff must "plausibly suggest an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

In addition, *pro se* plaintiffs are held to a "less stringent standard" than lawyers, and courts construe their pleadings liberally, no matter how "inartfully pleaded." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Nonetheless, a *pro se* complaint must still meet the "minimum threshold of plausibility" under *Twombly* and *Iqbal*.  *See Manigault v. Capital One, N.A.*, CIVIL NO. JKB-23-223, 2023 WL 3932319, at *2 (D. Md. June 8, 2023).  While *pro se* complaints "represent the work of an untutored hand requiring special judicial solicitude," district courts are not required to "conjure up questions never squarely presented to them" or to "construct full blown claims from . . . fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277–78 (4th Cir. 1985).

### 2. Subject matter jurisdiction

Defendants also move to dismiss for lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  "A defendant may raise a Rule 12(b)(1) issue in one of two ways." *Equal Rights Ctr. v. Abercrombie & Fitch Co.*, 767 F. Supp. 2d 510, 514 (D. Md. 2010).  First, a defendant may dispute the jurisdictional allegations in the complaint, in which case the district court may "'go beyond the allegations of the complaint' and hold an evidentiary hearing to 'determine if there are facts to support the jurisdictional allegations.'" *24th Senatorial Dist. Republican Comm. v. Alcorn*, 820 F.3d 624, 629 (4th Cir. 2016) (quoting *Adams v. Bain*, 697 F.2d 1213,

1219 (4th Cir. 1982)). Second, a defendant may contend that the complaint fails to allege facts upon which subject-matter jurisdiction can be based. *Id.* In this second scenario, the court must grant the plaintiff the same protection to which he would be entitled under Rule 12(b)(6), which means the court takes all well-pleaded allegations as true. *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009). Even so, the court is not obligated to assume that the plaintiff's legal conclusions or arguments are also true. *Stephenson v. Panera Bread, LLC*, Civ. No. PJM-14-700, 2014 WL 2436133, at *2 (D. Md. May 29, 2014).

### 3. Summary judgment

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving part is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence

demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25. Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

The court is charged with liberally construing complaints filed by *pro se* litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). At the summary judgment stage, however, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. *See Chisolm v. Moultrie*, C/A No. 4:21-03506-BHH-TER, 2023 WL 3631798, at *1 (D.S.C. May 2, 2023). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

B. **Eighth Amendment—Failure to Protect**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *King v. Rubenstein*, 825 F.3d 206, 219 (4th Cir. 2016). It "proscribes more than physically barbarous punishments." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). It also "embodies" the concepts of "dignity, civilized standards, humanity, and decency." *Id.* Thus, the Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994); *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017).

To prevail on a claim of failure to protect from violence, plaintiff must establish that defendants exhibited deliberate or callous indifference to a specific known risk of harm. *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). However, a prison official cannot be found liable under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Rich v. Bruce*, 129 F.3d 336, 339–40 (4th Cir. 1997). A two-part inquiry that includes both an objective and a subjective component must be satisfied to establish liability. *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016).

Objectively, a plaintiff "must establish a serious deprivation of his rights in the form of a serious or significant physical injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014). The objective inquiry requires the court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Subjectively, a plaintiff must establish that the prison official had a "sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that the prison official was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and that the inference was drawn. *Id.* at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk in the usual ways including inference from circumstantial evidence" so that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that

8

the risk was obvious." *Raynor*, 817 F.3d at 128. Moreover, actual knowledge of a substantial risk alone does not establish liability. Where prison officials responded reasonably to a risk, they may be found free of liability. *Farmer*, 511 U.S. at 844.

Cobb alleges that Officer Cohen and Lt. Turner violated his rights by having the cell door open where the assault occurred, despite knowing that the inmates there had violent histories. He further alleges that this was in violation of a jail policy, and that there was a history of assaults occurring in the past. Based on Cobb's allegations, Officer Cohen and Lt. Turner are the only two defendants that were directly involved in the alleged violation. Plaintiff appears to seek supervisory liability against the other defendants for the assault.

First, Cobb has plausibly alleged a significant physical injury that resulted from his assault. The injury was serious enough to consider surgery on his eye socket. Defendants do not argue that plaintiff's injury was not objectively serious. Second, on the subjective component, Cobbs claims that Cohen and Turner were deliberately indifferent for failing to take steps to prevent the assault from occurring.[4] He alleges that assaults in this area were a known and ongoing issue, and that the assaults could have been prevented by serving food through the tray hole with the door closed. This is sufficient to plead a plausible deliberate indifference claim against Cohen and Turner. "A plaintiff can make a prima facie case of deliberate indifference by showing that a substantial risk of serious harm was pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." *Cox*, 828 F.3d at 236.

---

[4] Cobb does not allege that Cohen and Turner did anything wrong in terms of intervening or trying to stop an ongoing assault.

9

For these reasons, the court will deny the motion to dismiss as to Cobb's claim of deliberate indifference against Officer Cohen and Lt. Turner.

## C. Deliberate Indifference—Inadequate Medical Care

"Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018). A constitutional violation occurs when "a prison official demonstrates 'deliberate indifference' to an inmate's serious medical needs." *Id.*

An Eighth Amendment claim of deliberate indifference based on inadequate medical care has two components. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry." *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017). "The objective component of a deliberate indifference claim is satisfied by a serious medical condition." *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019). A serious medical condition is one that is "diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.*

On the subjective component, deliberate indifference is "a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson*, 775 F.3d at 178. "In the context of a claim related to the denial of medical treatment or a delay in providing such treatment, 'a defendant acts with deliberate indifference if he had actual knowledge of the plaintiff's serious medical needs and related risks, but nevertheless disregarded them.'" *Griffin v. Mortier*, 837 F. App'x 166, 170 (4th Cir. 2020) (quoting *Gordon*,

10

937 F.3d at 357). "The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally denying or delaying medical care, or intentionally interfering with prescribed medical care." *Formica v. Aylor*, 739 F. App'x 745, 754 (4th Cir. 2018) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)).

Moreover, an inmate's mere disagreement with medical providers as to the proper course of treatment also does not support a claim under the deliberate indifference standard. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Rather, a prisoner-plaintiff must show that the medical provider failed to make a sincere and reasonable effort to care for the inmate's medical problems. *See Akinola v. Lavin*, Civil Action No. DKC-22-657, 2023 WL 3320937, at *4 (D. Md. May 9, 2023) (citing *Startz v. Cullen*, 468 F.2d 560, 561 (2d Cir. 1972)).

Again, there is no dispute or argument that Cobb's injury that resulted from his assault was objectively serious. On the subjective component, however, the evidence provided by defendants establishes that they were not deliberately indifferent to Cobb's medical needs. Cobb received prompt medical attention from medical providers. The failure to be transferred to Roanoke Memorial Hospital was Cobb's decision. Moreover, not having surgery was also Cobb's decision after consultation with a surgeon. Finally, defendants did not interfere with or delay Cobb's treatment. Defendants are entitled to summary judgment on Cobb's Eighth Amendment claim regarding his medical care.

**D. Supervisory Liability**

As noted, the only defendants alleged to have been personally involved with the assault are Officer Cohen and Lt. Turner. As to the rest of the defendants, it is "well established that a supervisory government official government official cannot be held liable under § 1983 for the

actions of his subordinates solely on the basis of *respondeat superior*." *Shelton v. Wang*, Civil Action No. 7:20cv00704, 2022 WL 4460520, at *7 (W.D. Va. Sept. 26, 2022) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–92 (1978)). Nonetheless, a supervisory official may be liable for his subordinate's acts if the supervisor himself bears personal responsibility for those acts. *Iqbal*, 556 U.S. at 676. "Liability in this context is not premised on *respondeat superior*, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).[5]

To prevail on a claim for supervisory liability, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that [his or her] subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). Ultimately, to withstand a Rule 12(b)(6) motion on a claim for supervisory liability, plaintiff's allegations must contain "specific facts as to misconduct" rather than "boilerplate and conclusory assertions." *Whitestone v. Mayor & City Council of Balt. City*, Civil Case No. ELH-18-738, 2019 WL 1200555, at *16 (D. Md. Mar. 13, 2019)

As an initial matter, Cobb's complaint fails to plausibly allege Lisa Ferguson had any supervisory authority with respect to Officer Cohen or Lt. Turner. Ferguson is not mentioned anywhere in the complaint's allegations aside from being named as a defendant in the caption.

---

[5] There can be no supervisory liability based on Cobb's claim of inadequate medical care because defendants are entitled to summary judgment on that claim. *See Doe v. Rosa*, 664 F. App'x 301, 303 n.2 (4th Cir. 2016) (noting there can be no supervisory liability when there is no underlying violation of the Constitution).

12

Similarly, Cobb does not plausibly allege that Officer Crigger, who accompanied plaintiff to the emergency room after his assault, had a role as supervisor of Cohen or Turner.

Cobb alleges that Lt. Hatley and Sgt. Anders, Cohen, and Turner's supervisors, "allowed them to perform their duties in that manner." (Compl. at 4.) This conclusory assertion does not plausibly allege that Hatley or Anders had "actual or constructive knowledge" that Cohen or Turner were engaged in conduct that posed a "pervasive and unreasonable risk" of injury to plaintiff. Similarly, Cobb alleges that Superintendent Hoag was "responsible for the safety of all inmates housed in the New River Valley Regional Jail." (Compl. at 4.) This is not a plausible allegation that Hoag had actual or constructive knowledge of the risk, or that her response was so inadequate that it demonstrates deliberate indifference.

For these reasons, while Cobb plausibly alleges a deliberate indifference claim against Cohen and Turner based on their personal involvement in the conditions that led to his assault, Cobb has not plausibly alleged that any of the other defendants can be liable for the assault as supervisors.

### E. Negligence

Defendants note that Cobb makes a reference to negligence. To the extent that Cobb is attempting to allege such a claim, defendants are entitled to sovereign immunity as Commonwealth employees. *See Coppage v. Mann*, 906 F. Supp. 1025, 1047–48 (E.D. Va. 1995).

### F. Grievance Procedures

Cobb makes various allegations about the grievance procedures at the New River Regional Jail. To the extent that Cobb is alleging a claim based on purported deficiencies with the grievance procedures, Cobb has no constitutional claim. "[I]nmates have no constitutional

entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process, for example." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017).

### III.  CONCLUSION

For the reasons stated in the foregoing opinion, the court will grant in part and deny in part defendants' motion. The court will issue an appropriate order.

Entered: September 27, 2023.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge