CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
September 16, 2024
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RAYMOND COBB, )<br>    Plaintiff, ) | Civil Action No. 7:22-cv-00610 |
| )<br>v. ) | |
| ) | By: Elizabeth K. Dillon |
| OFFICER COHEN, *et al.*, ) | Chief United States District Judge |
|     Defendants. ) | |

**MEMORANDUM OPINION**

Raymond Cobb, a Virginia inmate proceeding *pro se*, brought this 42 U.S.C. § 1983 action alleging that his assault by a fellow inmate violated his constitutional rights. (Compl., Dkt. No. 1.) The court previously issued an order dismissing various defendants except for the two remaining defendants, Officer Jeremy Cohen and Lieutenant Michael Turner (Dkt. Nos. 36, 37), who now move for summary judgment (Dkt. No. 42). This motion will be granted.

I. BACKGROUND

**A. Cobb's Complaint**

Cobb was an inmate at the New River Regional Jail in Dublin, Virginia, in August 2022. (*See* Compl.) Cobb alleges that on August 27, 2022, he was struck on the left side of his face by an inmate while he was working as a tray server and serving trays at the maximum-security dorm. Cobb asserts that unspecified officers were in violation of the jail's policy because they opened the doors to the wing instead of serving through the tray hole with the door closed. (*See id.*) Cobb's complaint names seven defendants: Superintendent Kimberly Haug, Lisa Ferguson, Lt. James Hatfield, Officer Jeremy Cohen, Lt. Michael Turner, Sgt. Shane Anders, and Officer Joshua Crigger. As noted, Officer Cohen and Lieutenant Turner are the only defendants remaining in this matter.

Cobb claims that he was knocked to the ground and was almost unconscious. (Compl. at 4.) He was transported to the emergency room, and x-rays showed that his left eye socket was cracked in several places. Cobb alleges that Officer Cohen and Lt. Turner violated his rights by having the cell door open when they knew that the inmates were housed there because of violent histories. (*Id.*) According to Cobb, inmates serving trays have been attacked in this manner before, and the jail continues to be negligent in this area. (*Id.*)

Cobb asserts that the left side of his face continues to be numb, and he can only chew on the right side of his mouth. He experiences sinus headaches. (*Id.* at 4.) Plaintiff seeks compensatory relief for pain and suffering. (*Id.* at 6.)

The court has construed Cobb's complaint to allege an Eighth Amendment deliberate indifference claim based on his assault in prison. (Dkt. No. 36 at 3.)

**B. Cohen and Turner Declarations**

Officer Cohen and Lieutenant Turner filed declarations in support of their motion for summary judgment. (*See* Cohen Decl. ¶ 1, Dkt. No. 43-1; Turner Decl. ¶ 1, Dkt. No. 43-2; Second Cohen Decl., Dkt. No. 49-1; Second Turner Decl., Dkt. No. 49-2.)

On August 27, 2022, Officer Cohen was working his shift with Lt. Turner, who at that time was covering for Officer Cohen's usual partner in that pod. (Cohen Decl. ¶ 3.) It was Lt. Turner's second day working with Officer Cohen in that pod. (Turner Decl. ¶ 3.)

Cobb, an inmate trustee, was serving food trays along with another trustee. (Cohen Decl. ¶ 5.) Lt. Turner was checking off the names of inmates at the door where the food was being served while Officer Cohen was on the other side of the pod serving water. (Cohen Decl. ¶ 4; Turner Decl. ¶ 4.) Lt. Turner did not know Cobb prior to that day. (Turner Decl. ¶ 4.)

Cobb was suddenly sucker-punched by another inmate when Cobb looked away to retrieve a food tray for that inmate. (Turner Decl. ¶ 5.) Lt. Turner immediately apprehended the assailant and prevented any further assault. (Turner Decl. ¶ 6; Video at 00:15, Dkt. No. 52.) Officer Cohen was nearby, and he quickly assisted Lt. Turner with controlling the assailant and preventing any further injury to Cobb. (Cohen Decl. ¶ 11; Video at 00:20.)

Lt. Turner did not know the assailant and was not aware of any prior assaults or threats of assault against Cobb or any other trustee. (Turner Decl. ¶¶ 4–5.) Officer Cohen had interacted with the assailant previously; Cohen knew him as Mr. Allen because he was an inmate in the pod that Officer Cohen manned regularly. (Cohen Decl. ¶ 8.) However, Officer Cohen did not have any reason to suspect that Allen would attack Cobb as Allen had been polite and respectful in Cohen's presence. (*Id.*) Allen was not considered a violent inmate, and thus, was not housed in a block that restricted freedom of movement. (Second Cohen Decl. ¶ 7.) Also, Officer Cohen was not aware of any interactions or issues between Cobb and Allen, and he was not aware of any threats against Cobb by Allen or anyone else. (Cohen Decl. ¶ 6.) The pods are screened ahead of time to make sure the trustees do not have any known enemies in the pod where they are working. (Turner Decl. ¶ 9.) When inmates apply to be a trustee, they fill out a form asking if they have any enemies within the facility and are asked to name any such enemies. (Second Cohen Decl. ¶ 3.)

Before this incident, Officer Cohen was not aware of any prior assaults against inmates serving food through an open door. (Cohen Decl. ¶ 6.) It was normal for the door to be open while serving food trays to pods. (Turner Decl. ¶ 7.) Officer Cohen had never witnessed a trustee being assaulted by another inmate while performing food tray service. (Second Cohen Decl. ¶ 6.) Lt. Turner understood that Cobb had distributed trays in the pod in the same manner

3

on multiple occasions with no issues. (Cohen Decl. ¶ 7.) Cobb himself had not expressed any concerns to Cohen about serving food with the door open. (*Id.*) While Lt. Turner never witnessed Cobb serving food in that block, it was his understanding that it had happened in the past. (Second Turner Decl. ¶ 3.) The other trustee, who was assisting Cobb and the officers, did not express any concerns about the door being open, and neither the inmate nor Cobb warned Turner or Cohen about any possible threat from another inmate. (Turner Decl. ¶ 8.)

One common and acceptable form of supervision and safety control is for a correctional officer to be present when inmates are in close physical proximity to each other and/or other jail staff. (Cohen Decl. ¶ 9; Turner Decl. ¶ 10.) For example, during medical calls, the nurse is in a room near the inmate, and Lt. Turner provides for their safety by standing nearby, just as he was standing right next to Cobb on the day of the assault. (Turner Decl. ¶ 11.) Similarly, when Officer Cohen is present with the medical staff and inmates during medical calls, he stands near the inmate and medical staff just like Turner did at the time of the assault. (Cohen Decl. ¶ 10.)

Ultimately, on the date of the incident, Officer Cohen and Lt. Turner had no reason to suspect that Cobb would be assaulted. (Cohen Decl. ¶ 13; Turner Decl. ¶ 12.)

## C. Cobb Declarations[1]

Cobb declares under penalty of perjury that defendants' statement that the pods are screened ahead of time to ensure the trustees do not have any known enemies in a pod is false. (Dkt. No. 45 at 1.) Cobb also asserts that he confirmed, through other jail staff, that there had been documented incidents where inmates housed in the pod for men with violent tendencies had attacked a trustee during meals. The date of the incident, August 27, 2022, was Cobb's first time

---

[1] Defendants argue that one of plaintiff's responses, which is a declaration made under penalty of perjury, should not be considered because the handwriting and the signature do not match the accompanying letter (Dkt. No. 45-1), which suggests that someone other than plaintiff wrote either the response or the letter, and forged plaintiff's signature. Nonetheless, the court considers the declaration and expresses no opinion on this issue.

passing out trays in this particular pod. At other pods, where Cobb had previously served, and where non-violent inmates were housed, officers always made sure the doors were secure and that trustees fed through the tray hole. (*Id.* at 2.)

Cobb continues to state that violent offenders are not frequently in close proximity, as stated by Turner and Cohen, and that jail protocol mandates that inmates in jail for violent offenses, or who have committed violence during their jail stay, must be separated from non-violent inmates. (*Id.* at 3; *see also* Dkt. No. 53[2] at 1–2 ("What is important here is that those inmates housed in 'E' block where Cobb was serving are, in fact, considered more violent than the inmates in lower level pods; either because of what they've been charged with, or their past behavior in the jail.").) Cobb argues that the example provided about medical staff is "misleading" because violent inmates are less likely to assault medical staff or jail officers as the inmate would likely receive a substantial charge, which does not happen when a fellow inmate is assaulted. (Dkt. No. 45 at 4.)

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

---

[2] In addition to his response, plaintiff filed an unauthorized sur-reply brief that the court has nonetheless considered. (Dkt. No. 53.)

5

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of fact precludes summary judgment. *Anderson*, 477 U.S. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

The submissions of *pro se* litigants are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That notwithstanding, the court must also abide the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

**B. Eighth Amendment—Failure to Protect**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *King v. Rubenstein*, 825 F.3d 206, 219 (4th Cir. 2016). It "proscribes more than physically barbarous punishments." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). It also "embodies" the concepts of "dignity, civilized standards,

humanity, and decency." *Id.* Thus, the Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994); *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017).

To prevail on a claim of failure to protect from violence, plaintiff must establish that defendants exhibited deliberate or callous indifference to a specific known risk of harm. *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). However, a prison official cannot be found liable under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Rich v. Bruce*, 129 F.3d 336, 339–40 (4th Cir. 1997). A two-part inquiry that includes both an objective and a subjective component must be satisfied to establish liability. *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016).

Objectively, a plaintiff "must establish a serious deprivation of his rights in the form of a serious or significant physical injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014). The objective inquiry requires the court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

7

Subjectively, a plaintiff must establish that the prison official had a "sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that the prison official was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and that the inference was drawn. *Id.* at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk in the usual ways including inference from circumstantial evidence" so that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Raynor*, 817 F.3d at 128.

Actual knowledge of a substantial risk alone does not establish liability. Where prison officials responded reasonably to a risk, they may be found free of liability. *Farmer*, 511 U.S. at 844. The United States Supreme Court and the Fourth Circuit have rejected a negligence standard in determining deliberate indifference. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Moore v. Winebrenner*, 927 F.2d 1312, 1315–17 (4th Cir. 1991). Thus, merely negligent behavior by a prison official in failing to protect a prisoner from a risk of harm does not present a constitutional violation. *See Whitley*, 475 U.S. at 319 ("[C]onduct that does not purport to be punishment at all must involve more than ordinary lack of due care . . . . [O]bduracy and wantonness, not inadvertence . . . characterize the conduct prohibited by the Eighth Amendment."); *Moore*, 927 F.2d at 1316 (citing Fourth Circuit cases and adopting the Supreme Court's reasoning in *Whitley*).

Here, the record establishes that defendants did not have actual knowledge of an excessive risk to Cobb's safety. Both Cohen and Turner declared under penalty of perjury that they had no knowledge of threats to Cobb or issues between Cobb and his assailant, Mr. Allen.

Allen had been polite and respectful to Cohen in past experiences. Lt. Turner had less opportunity to garner such knowledge as he was covering for Cohen's partner on the day of the incident for the second day. And in Turner's understanding, Cobb had regularly fed the pod in a similar fashion with no issues. Therefore, the defendants had no reason to infer a threat to Cobb from Allen or anyone else. Further, the defendants responded reasonably by apprehending the assailant and preventing further assault. Officer Cohen was across the room from Cobb, but he was aware that Lt. Turner was checking off names as inmates received their food. Thus, it was reasonable for Officer Cohen to rely on Turner to react immediately to any threat to Cobb or the other trustee inmates, which is what happened as Turner immediately intervened, with Cohen assisting as soon as he could. *See, e.g.*, *Nelson v. Henthorn*, 677 F. App'x 823 (4th Cir. 2017) (affirming grant of summary judgment where correctional officer investigated and took mitigating measures in response to specific threats because "failure to eliminate completely the danger posed . . . may or may not support a negligence claim, [but] it does not rise to the level of deliberate indifference").

Clearly, this case is unlike cases finding sufficient knowledge of a substantial risk to establish deliberate indifference. For example, in *Makdessi v. Fields*, an inmate alleged that he had submitted multiple requests for protective custody, as well as multiple letters and informal complaints regarding his cellmate, who was an "aggressive gang member." 789 F.3d 126, 129–30 (4th Cir. 2015). For "years," the inmate "complained to prison officials, including in the form of numerous written letters and grievances, about physical and sexual abuse he suffered in prison. Those complaints often garnered no response, and one response" to a complaint mentioning sexual assault stated, "hopefully you will be well soon." *Id.* at 135. Thus, the court vacated the dismissal of the prisoner's claims. *Id.* at 136. Unlike *Makdessi*, Cobb's assault was

9

not preceded by complaints that were "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and [where] the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." *Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016); *see, e.g.*, *Clark v. Stirling*, C/A No. 0:18-2257-TLW-PJG, 2019 WL 8754877, at *5 (D.S.C. Nov. 8, 2019) (recommending grant of summary judgment on failure to protect claim where the "allegations of substantial risk appear to hinge more on the overall conditions of [the unit] rather than [the assailant] specifically"; plaintiff "does not even allege—much less offer proof—that Defendant [] had knowledge of the conditions of [the unit] that posed a specific risk of harm"; and defendant's "status as a former victim of [the assailant] is insufficient to show that [defendant] had the requisite knowledge of a substantial risk of serious harm to other inmates and that he drew such an inference"), *adopting report and recommendation*, 2020 WL 1283711 (D.S.C. Mar. 18, 2020); *Taylor v. Hunter*, Civil Action No. 2016 WL 6804885, at *3 (E.D. Va. Nov. 16, 2016) (noting that "a baseline risk of assault inherent to prison life cannot support an Eighth Amendment claim" and granting summary judgment where plaintiff "has not produced any admissible evidence that [the assailant] was particularly inclined to assault other inmates" or that defendant "knew of any threats" directed toward plaintiff).

Cobb's assertions about how violent offenders should be kept apart from non-violent inmates (*see* Dkt. Nos. 45, 53) are insufficient to create any relevant issue of fact. For instance, Cobb lacks personal knowledge as to whether the pods are screened for known enemies. As stated in Officer Cohen's second declaration, when inmates apply to be a trustee, they fill out a form asking if they have any enemies within the facility and are asked to name any such enemies. (Second Cohen Decl. ¶ 3.) Similarly, Cobb's statements about prior assaults are

insufficient to establish that Officer Cohen knew about such assaults. Officer Cohen had never witnessed a trustee being assaulted by another inmate while performing food tray service. (Second Cohen Decl. ¶ 6.) Third, even if Cobb never served food through open doors, this is not material to whether defendants consciously disregarded a known substantial risk. While Lt. Turner never witnessed Cobb serving food in that block, it was his understanding that it had happened in the past. (Second Turner Decl. ¶ 3.) Finally, Cobb's assertion about segregating violent inmates from nonviolent inmates is not relevant because Allen, the assailant, was not considered a violent inmate, and thus, was not housed in a block that restricted freedom of movement. (Second Cohen Decl. ¶ 7.)

For these reasons, defendants Cohen and Turner are entitled to summary judgment.

### III. CONCLUSION

The court will issue an appropriate order granting the motion for summary judgment and entering a final order of dismissal.

Entered: September 16, 2024.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge